# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

MARTEZ ELI,

    Petitioner

v.

WARDEN, NORTH CENTRAL
CORRECTIONAL INSTITUTION,

    Respondent.

Case No. 2:18–cv–1742
Judge Algenon L. Marbley
Magistrate Judge Chelsey M. Vascura

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, has filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1.) Petitioner seeks release from confinement pursuant to a state court judgment in a criminal action. This case has been referred to the undersigned pursuant to 28 U.S.C § 636(b) and Columbus' General Order 14-1 regarding assignments and references to United States Magistrate Judges.

Pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Court ("Rule 4"), the Court must conduct a preliminary review to determine whether "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." If it does so appear, the petition must be dismissed. *Id*. Rule 4 allows for the dismissal of petitions which raise legally frivolous claims, as well as petitions that contain factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). For the reasons that follow, it plainly appears that Petitioner is not entitled to relief because his Fourth Amendment claims are not cognizable. All of Petitioner's

other claims are procedurally barred. Accordingly, the undersigned **RECOMMENDS** that this action be **DISMISSED**.

## I. BACKGROUND

The state appellate court summarized the facts and procedural history of this case as follows:

. . . On October 15, 2015, Officer Lisa Walls of the Adult Parole Authority, went to 75 Allen Street in Newark to attempt a field contact with Eric Osler, a parolee under her supervision. She was accompanied by Parole Officers Greer and Wells. Walls had information indicating Osler was in possession of a firearm and was dealing drugs. As a person under the supervision of the Adult Parole Authority, Osler is subject to warrantless searches of his person, home, and vehicle pursuant to R.C. 2951.02 and/or R.C. 2967.131. He further was to have no contact with his son, defendant–appellant Martez Eli. Osler signed conditions of supervision outlining his understanding of these conditions.

. . . On arrival at Osler's residence, the officers were admitted by the homeowner, Tisha Aldridge. They found Osler in his bedroom, lying in bed. The officers placed Osler in custody, cleared the living room and had Osler sit on the sofa. Asked where the firearm was, Osler initially denied he had one. He further denied there was anyone in the house besides himself, Aldridge and her 17–year–old son. He later admitted two of his sons, including Eli, were upstairs with one of their girlfriends. Officers had the three come downstairs and sit in the living room. They were not handcuffed, nor were they under arrest. The officers were familiar with Eli and his brother and aware that they are known to possess firearms. Officers therefore wanted to keep the men visible during the search for officer safety.

. . . Osler finally admitted he possessed a firearm and that it was in the bed where officers had found him. Officers seized the fully loaded weapon. Additional searching of Osler's room yielded methamphetamine, ammunition of different calibers, burner phones and drug paraphernalia. The officers requested assistance from the Central Ohio Drug Enforcement Task Force (CODE), as is their procedure when they find drugs or firearms.

. . . Detective Kyle Boerstler of the Licking County Sherriff's Office and assigned to CODE, arrived at the scene. He was assisted by Officer Fumi and Detective Kimble of the Newark Police Department who were also called to the scene. Aldridge gave Boerstler consent to search her home. Before searching Boerstler asked those seated in the living room who lived in the home. Eli stated he lived there "from time to time." Boerstler thus asked is Eli had any belongings in the home, and Eli denied having any possessions in the home. Boerstler asked those in the living room to remain there during the search for officer safety.

. . . Officer Fumi began the search in an upstairs bedroom where he found a black backpack. Inside the backpack was a baggy containing 254 oxycodone pills, a second baggy containing heroin, and some marijuana. He alerted Boerstler, who took the backpack and its contents downstairs.

. . . Boerstler asked those gathered in the living room who owned the backpack. Eli stated it belonged to him.

. . . A more through search of the backpack produced a Greyhound Bus ticket with Eli listed as the passenger, and dated September 21, 2015, $94.00 in cash, a piece of mail addressed to Eli, a photo of Eli and his girlfriend, small jeweler bags commonly used to package drugs for sale, and a wallet containing Eli's expired driver's license. Eli was not arrested following the search and discovery of the drugs in his backpack.

. . . On July 21, 2016, the Licking County Grand Jury returned an indictment charging Eli with one count of aggravated possession of oxycodone in an amount equal to or exceeding five times the bulk amount, but less than fifty times the bulk amount in violation of R.C. 2925.11(A)(C)(1)(c), a felony of the second degree, and possession of heroin in violation of R.C. 2925.11(A)(C)(6)(a), a felony of the fifth degree.

. . . On August 26, 2016, Eli filed two motions to suppress. One to suppress his statements for lack of *Miranda* warnings, and a second to suppress the drugs discovered in the backpack. On October 11, 2016, a hearing was held on the matter. The trial court denied Eli's motions by judgment entry on October 25, 2016. The court found that Eli lacked standing to challenge the search of the backpack because

he abandoned the backpack by denying ownership of anything in the home. The court found Eli could not therefore retain a reasonable expectation of privacy in the same.

. . . The trial court further found that Eli was not in custody and thus *Miranda* warnings were not required. The court explained that while Eli was asked to remain in the living room during the search, he was not handcuffed and there was no evidence presented at the hearing to indicate Eli believed he was under arrest or detained in any manner. Finally, the trial court noted that after the search was concluded, Eli was free to leave and did so.

. . . The matter proceeded to a jury trial on December 12, 2016. The jury convicted Eli as charged. He was subsequently sentenced to a mandatory four years incarceration for aggravated possession of oxycodone and nine months incarceration for possession of heroin. Eli was ordered to serve the sentences concurrently.

. . . Eli filed an appeal and the matter is now before this court for review. Assignments of error are as follows:

I. THE TRIAL COURT ERRED IN FINDING THAT THE WARRANTLESS SEARCH OF THE BACKPACK BY LAW ENFORCEMENT OFFICERS WAS JUSTIFIED BECAUSE APPELLANT HAD VOLUNTARILY ABANDONED IT . . . .

II. THE TRIAL COURT ERRED IN FINDING THAT THE UNCOUNSELED STATEMENTS OF APPELLANT WERE ADMISSIBLE BECAUSE HE WAS NOT DETAINED . . . .

III. THE JURY'S VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE . . . .

IV. THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS . . . .

V. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIM. R. 29 . . . .

*State v. Eli*, 97 N.E. 3d 863, 865–67 (Ohio Ct. App. 2017). On September 15, 2017, the state appellate court overruled all five assignments of error and affirmed the trial court. *Id.* at 869, 871. Petitioner sought an appeal of that determination, but on January 31, 2018, the Ohio Supreme Court declined to exercise jurisdiction over the matter. *State v. Eli*, 151 Ohio St. 3d 1514 (Ohio 2018).

Petitioner filed his petition seeking a writ of habeas corpus under § 2254 in the United States District Court for the Northern District of Ohio before the matter was transferred here. (ECF No. 3.) In his grounds for relief, Petitioner alleges that his Fourth Amendment rights were violated by the warrantless search of his backpack because Petitioner did not abandon it (ECF No. 1–1, at PAGE ID # 17–19); the items inside the backpack were not in plain view (*id.*); Petitioner had a legitimate expectation of privacy in the backpack (*id.*, at PAGE ID # 19–21); and that neither Osler nor Aldridge had common or apparent authority to consent to the backpack search (*id.*, at PAGE ID # 21–24). Petitioner also alleges that the state court's suppression determinations amounted to a "sham" and that the search violated his Equal Protection rights. (*Id.*, at PAGE ID # 24–25). Petitioner additionally alleges that he received ineffective assistance of trial and appellate counsel. (*Id.*, at PAGE ID # 26–30).[1]

## II. ANALYSIS

### A. Petitioner's Fourth Amendment Claims Are Not Cognizable.

The Fourth Amendment prohibits "unreasonable searches and seizures." Consequently, evidence recovered from an illegal search is inadmissible at trial. *Mapp v. Ohio*, 367 U.S. 643, 655–56 (1961) (finding rule announced in *Weeks v. United States,* 232 U.S. 383, 398 (1914)

---

[1] The petition pages appear to be mis–numbered. (ECF Nos. 1, 1–1.) Nevertheless, it does not appear that Petitioner alleges as grounds for relief any issues related to the admission of his un-*Mirandized* statements to the police officers.

5

applies to states)). Evidence that is recovered indirectly from an illegal search or seizure is also inadmissible as "fruit of the poisonous tree." *Segura v. United States,* 468 U.S. 796, 804 (1984); *Wong Sun v. United States,* 371 U.S. 471, 484-85 (1963). All of Petitioner's various Fourth Amendment grounds for relief are premised upon these well–settled propositions.

It is equally well-settled, however, that a petitioner cannot obtain habeas relief absent a showing that he was denied a "full and fair opportunity to litigate his Fourth Amendment claim in state court." *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (citing *Stone v. Powell*, 428 U.S. 465, 494–95 (1976)). For a full and fair opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F. 2d 522, 526 (6th Cir. 1982). The opportunity to litigate encompasses more than an evidentiary hearing in the trial court— it also includes the ability to raise the claim on direct appeal of the conviction. *See Rashad v. Lafler,* 675 F. 3d 564, 570 (6th Cir. 2012) (finding petitioner had ample opportunities to present his Fourth Amendment claims in the state courts; the trial court rejected his Fourth Amendment claims on forfeiture grounds because his attorney did not show up at a hearing designed to consider them, and a state appellate court subsequently rejected his claims on the merits). Nevertheless, in *Good v. Berghuis*, 729 F. 3d 636, 638-40 (6th Cir. 2013), the Sixth Circuit held that "[t]he 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his [or her] claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Id*. at 639. The Sixth Circuit further stated that "in the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claim." *Id*.

The petition summarily states that "the state court process amounts to a sham." (ECF No. 1–1, at PAGE ID # 24.) Nevertheless, it is clear that Petitioner raised Fourth Amendment claims to the trial court in a motion to suppress. Petitioner later presented his Fourth Amendment claims to the state appellate court, which considered them before finding that they were without merit. This is sufficient, under *Good*, to preclude habeas review of Petitioner's Fourth Amendment claims. Indeed, although Petitioner appears to contend that the state trial and appellate courts erred when they decided those claims, the relevant inquiry remains whether Petitioner had an opportunity to litigate those claims, not whether he did so or even if the claims were correctly decided. *Hillman v. Beightler,* Case No. 5:09–CV–2538, 2010 WL 2232635, at *5 (N.D. Ohio May 26, 2010) (citing *Cabrera v. Hinsley*, 324 F.3d 527, 531– 32 (7th Cir. 2003) (explaining that a full and fair opportunity to litigate guarantees the right to present a case, but it does not guarantee a correct result). Accordingly, the undersigned **RECOMMENDS** that Petitioner's Fourth Amendment claims be **DENIED**.

**B.** **Petitioner's Other Claims Are Procedurally Barred.**

Petitioner's other claims— that the backpack search violated his Equal Protection rights and that he received ineffective assistance of trial and appellate counsel— were never raised in the state courts.

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c).

If he fails to do so, but still has an avenue open to present his claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless,* 459 U.S. 4, 6, 8 (1982) (*per curiam*) (citing *Picard v. Connor,* 404 U.S. 270, 275–78 (1971)). In addition, federal courts will not consider the merits of procedurally defaulted claims unless a petitioner demonstrates cause for the default and resulting prejudice, or where failure to review the claim would result in a fundamental miscarriage of justice because a constitutional violation probably resulted in the conviction of someone who is actually innocent of the substantive offense. *Lundgren v. Mitchell*, 440 F. 3d 754, 763 (6th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 749 (1991)); *Dretke v. Haley,* 541 U.S. 386, 392 (2004) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

"A claim may be procedurally defaulted in two ways." *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) (quoting *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)). First, a claim will be procedurally defaulted where a petitioner fails to raise and pursue a claim through the state's "ordinary appellate review procedures." *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009) (citing *Williams*, 460 F. 3d 806) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 846–47 (1999)). Thus, a petitioner must "'obtain consideration of a claim by a state courts . . . while state–court remedies are still available.'" *Lundgren*, 440 F. 3d at 763 (quoting *Seymour v. Walker*, 224 F.3d 542, 549–50 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). If, at the time the petition is filed, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *see also Coleman*, 501 U.S. at 735 n.1 (1991); *Lovins*, 712 F.3d at 295 ("[A] claim is procedurally defaulted where the petitioner failed to exhaust state–court remedies, and the remedies are no

longer available at the time the federal habeas petition is filed because of a state procedural rule.").

A claim may also be procedurally defaulted if state–court remedies have been exhausted but the last reasoned state–court judgement declines to reach the merits of the claim because of a petitioner's failure to comply with a state procedural rule. *Lovins*, 712 F.3d at 295; *Lundgren*, 440 F. 3d at 763. In such circumstances, courts in the Sixth Circuit engage in the four-part analysis described in *Maupin v. Smith* 785 F.2d 135, 138 (6th Cir. 1986). The court must first determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. Second, the court must determine whether the state courts actually enforced the state procedural sanction. Third, the court must determine whether the forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Maupin*, 785 F.2d at 138. Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause sufficient to excuse the default and (2) that he was actually prejudiced by the alleged constitutional error. *Id.*

Because Petitioner never raised his other claims to the state courts, the undersigned concludes that they are procedurally defaulted in this first manner described above. Specifically, the public docket for the Licking County Clerk of Court reveals that Petitioner was represented by the same lawyer at trial and on direct appeal. In that situation, Petitioner was required to raise his ineffective assistance of trial counsel claims in a petition for post-conviction relief pursuant to O.R.C. § 2953.21. *Van Hook v. Anderson*, 127 F.Supp.2d 899, 913 (S.D. Ohio 2001) (citing *State v. Cole*, 2 Ohio St.3d 112 (1982)). Petitioner did not do so. Moreover, the time in

which to do so has long expired, and it does not appear that Petitioner can meet the stringent requirements for filing a delayed post–conviction petition.[2] Thus, Petitioner has procedurally

---

[2] O.R.C. § 2953.23 provides, in relevant part:

(A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless division (A)(1) or (2) of this section applies:

(1) Both of the following apply:

(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

(2) The petitioner was convicted of a felony, the petitioner is an offender for whom DNA testing was performed under sections 2953.71 to 2953.81 of the Revised Code or under former section 2953.82 of the Revised Code and analyzed in the context of and upon consideration of all available admissible evidence related to the inmate's case as described in division (D) of section 2953.74 of the Revised Code, and the results of the DNA testing establish, by clear and convincing evidence, actual innocence of that felony offense or, if the person was sentenced to death, establish, by clear and convincing evidence, actual innocence of the aggravating circumstance or circumstances the person was found guilty of committing and that is or are the basis of that sentence of death.
As used in this division, "actual innocence" has the same meaning as in division (A)(1)(b) of section 2953.21 of the Revised Code, and "former section 2953.82 of the Revised Code" has the same meaning as in division (A)(1)(c) of section 2953.21 of the Revised Code.

defaulted his ineffective assistance of trial counsel claim and he makes no allegations that might excuse that default.

Petitioner similarly defaulted his ineffective assistance of appellate counsel claim. Under Ohio law, the only way to raise such a claim is to file an application to re-open a direct appeal in the court of appeals within 90 days of the journalization of that court's judgment pursuant to Ohio R. App. P. 26(B). *See Van Hook* 127 F.Supp.2d at 913. Petitioner never filed such an application and his time to do so has also long since expired. He makes no allegations that might excuse that default either.

Last, Petitioner has procedurally defaulted his Equal Protection claim. Although not entirely clear, it appears that this claim would have appeared on the face of the record. Claims that appear on the face of the record must be raised on direct appeal, or they will be waived under Ohio's doctrine of *res judicata. Van Hook*, 127 F.Supp.2d at 913 (citing *State v. Perry,* 10 Ohio St.2d 175 (1967)). Petitioner appears to indicate that he failed to raise his Equal Protection claim in the state courts because he received the ineffective assistance of appellate counsel. (ECF No. 1, at PAGE ID #9.) That assertion, however, lacks merit because, as explained above, Petitioner's ineffective assistance of appellate counsel claim is procedurally defaulted and thus it cannot serve as cause for the default of another claim. *See Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000) (holding that the constitutionally ineffective assistance of counsel may constitute a cause for procedural default only when that claim has been presented to the state courts and is not itself procedurally defaulted).

### III. DISPOSITION

For the reasons set forth above, it is **RECOMMENDED** that this action be **DISMISSED**. The Clerk is **DIRECTED** to serve a copy of the petition and all subsequent

filings on Respondent and the Attorney General of Ohio, Habeas Corpus Unit of the Corrections Litigation Section c/o:

Brian.Higgins@ohioattorneygeneral.gov and Habeas.docketclerk@ohioattorneygeneral.gov.

## **PROCEDURE ON OBJECTIONS**

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the District Judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*_____
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE